**John B. WHEELER, SS# 256–28–0083, Plaintiff-Appellant,**

v.

**Margaret M. HECKLER, Secretary of Health and Human Services, Defendant-Appellee.**

No. 84–8886.

United States Court of Appeals, Eleventh Circuit.

March 18, 1986.

Bruce K. Billman, Macon, Ga., for plaintiff-appellant.

Frank L. Butler, III, Asst. U.S. Atty., Macon, Ga., Marie T. Ransley, Dept. of Health & Human Services, Office of Gen. Counsel, Atlanta, Ga., for defendant-appellee.

Before HILL and CLARK, Circuit Judges, and HOBBS *, Chief District Judge.

PER CURIAM:

## FACTS

In this appeal we review the Secretary's denial of appellant John B. Wheeler's claim for Social Security disability benefits. Wheeler, who had worked as a supervisor at a coal handling and loading facility, filed for disability benefits alleging an inability to work because of pain and complications arising from glaucoma, diabetes, hypertension, arthritis, varicose veins, foot disorders, and mental problems. The Administrative Law Judge before whom the disability hearing was conducted found that appellant could perform his past relevant work and thus ruled him ineligible for disability benefits. The Appeals Council refused to grant review. This appeal arises from the district court's decision upholding the Secretary's ruling. Wheeler contends that the Secretary's decision that he could still perform his former job is not supported by substantial evidence and that a Georgia state agency's finding that he could not return to his former work precluded the ALJ from reaching a contrary conclusion.

## DISCUSSION

If substantial evidence supports the Secretary's disability determination, we must affirm the decision of the district court.

*Harwell v. Heckler,* 735 F.2d 1292, 1293 (11th Cir.1984). We thus examine the evidence upon which the Secretary relied. Initially, the ALJ inquired extensively into appellant's duties in his former job. Appellant's testimony indicated that none of the duties of a coal handling foreman involved heavy lifting. To the contrary, appellant testified that in his job he did not lift anything at all. He did not use machines, tools, or equipment of any kind in performing his job. His primary exertional activity at his former job consisted of standing and walking.

■ Appellant's contention, therefore, is that the afflictions from which he suffers prevent him from enduring the sustained standing and walking that his former job required. We admit that appellant introduced considerable evidence to support this contention. However, in viewing the record as a whole we are unable to conclude that no substantial evidence exists supporting the Secretary's determination that appellant is not precluded by his impairments from this type of activity.

Appellant complains of disabling arthritis. An examination of appellant by Dr. W.E. Pound on April 10, 1981 revealed some evidence of arthritis and stiffness in the knees and ankles. In a May 28, 1982 deposition, Dr. Pound testified that appellant suffered aches and pains in his joints, particularly his fingers, and that appellant's knees were palpable and painful. However, from the record it appears that Dr. Pound performed no range of motion testing or x-rays or any other clinical or laboratory tests. The only doctor of record who x-rayed appellant with respect to these complaints was Dr. Waddell Barnes. These x-rays revealed some spurring of appellant's lumbosacral spine but showed no significant disc space narrowing or any bone or joint abnormality in appellant's hips. Dr. Barnes observed Heberden's nodes of appellant's fingers, which he de-

---

* Honorable Truman M. Hobbs, Chief U.S. District Judge for the Middle District of Alabama, sitting by designation.

scribed as "negative," and somewhat distorted toe joints, but no clear evidence of any limitation of motion with the exception of a Dupuytren's contracture in the left palm.

The weight afforded a physician's conclusory statements depends upon the extent to which they are supported by clinical or laboratory findings and are consistent with other evidence as to claimant's impairments. *Oldham v. Schweiker*, 660 F.2d 1078, 1084 (5th Cir. Unit B 1981).[1] While appellant obviously suffers from discomforting arthritis, in light of Dr. Barnes' observations Dr. Pound's conclusory statements failed to establish disability dispositively and there appears no conclusive finding as to limitation of motion. Substantial evidence supports the Secretary's finding that appellant's arthritis condition was not disabling.

Evidence indicates that appellant also experienced difficulty with his feet. The report of Dr. Paul G. Smaha, a podiatrist, states that he initially treated appellant on May 5, 1980 for complaints of painful corns and callouses on both feet. X-rays revealed spurs on the fifth toe of each foot, a hammer toe condition on one toe, and contracted tendons of three toes. The callouses and corns were removed and a buttress pad relieved appellant's symptoms of contraction. Appellant returned to Dr. Smaha for further treatment on December 21, 1981, and at that time callouses and corns were again removed and appellant was released. There is no evidence that appellant has sought further treatment for foot problems since that time. Substantial evidence exists that this condition does not prevent appellant from returning to his former job.

Appellant also introduced evidence that he suffered from varicose veins. Dr. Pound states in his deposition of June 12, 1981 that appellant has varicose veins in both legs with a fairly pronounced varicose vein in the right leg. Dr. Pound attributes the cramps which appellant suffers in both legs to the varicose vein condition. The

examination of Dr. Barnes revealed varicose veins in appellant's right leg only, as did Dr. Pound's April 10, 1981 examination. Such conflicting observations place in dispute Dr. Pound's assessment in his deposition as to the origin of the cramps. The Secretary, and not the court, is charged with the duty to weigh the evidence, to resolve material conflicts in the testimony, and to determine the case accordingly. *Laffoon v. Califano*, 558 F.2d 253, 254 (5th Cir.1977). Appellant also related to Dr. Barnes that his chief problem arising from the varicose vein condition was "occasional soreness on standing and walking." Dr. Pound, in a report of examination conducted April 10, 1981, twice described appellant's varicose vein condition as only moderate. Further, Dr. Barnes indicated that appellant's condition had probably existed for about 15 years. Substantial evidence supports the Secretary's finding that the varicose vein condition was not disabling.

Appellant also complains of intense pain in his legs, knees, ankles and feet which precludes him from performing his former work. Appellant's testimony, however, indicates that he assists his wife around the house and often sweeps and carries out the garbage. In addition, he "visits quite often," particularly with a sick aunt who lives about fifteen minutes away. He sleeps adequately and is able to take care of his personal needs, get up and down steps, and pick things up off the floor. The ALJ's finding that this testimony fails to establish disabling pain which would preclude an individual from engaging in substantial gainful activity is not clearly erroneous. *Newborn v. Harris*, 602 F.2d 105, 107 (5th Cir.1979).

Evidence was also introduced, namely the report of a psychological evaluation by Dr. Barbara Calhoun, that appellant suffers disabling mental impairments. Dr. Calhoun found that appellant's testing reflected him to be in a good deal of emotional pain with a lot of bodily preoccupation. In Dr. Calhoun's opinion, appellant had ex-

---

**1.** Decisions rendered after October 1, 1981, by a former Fifth Circuit Unit B panel are binding on this court. *Stein v. Reynolds Securities, Inc.*, 667 F.2d 33, 34 (11th Cir.1982).

hibited poor adaptive functioning with "a marked occupational impairment and restricted social relations." Other evidence, however, indicates that appellant's condition is not of sufficient severity to produce disability. On the Wechsler Adult Intelligence Scale appellant obtained a full scale score of 92, which placed him in the average range of intelligence. Appellant did not report any hallucinations or appear to have any illusions. While he suffers from what Dr. Calhoun considered moderate depression, there are no other indications of psychomotor disturbances with the exception of some slight hesitation in his speech. His daily activities seem to be well patterned and there were no reports of inappropriate behavior. The Secretary's determination that the appellant's condition did not produce disability is supported by substantial evidence.

Appellant also alleges disability resulting from diabetes, glaucoma, and hypertension. We note initially appellant's testimony that his principal difficulties were with his legs, knees, ankles, and feet, which implies that the glaucoma, diabetes, and hypertension are not disabling. With respect to the diabetes, Dr. Waddell Barnes found no evidence of diabetic complications on his examination of appellant and Dr. Richard Jones, an opthalomogist, reported that appellant's eyes had experienced no diabetic changes. Dr. Pound, while admitting that appellant "needs to work harder" to control his condition, indicated that appellant's diabetes had been treated and controlled through the years, that appellant's present level of medication was adequate, and that the fluctuation in appellant's blood sugars probably resulted from appellant's efforts to reduce his body weight. Regarding appellant's hypertension, Dr. Pound reported that while appellant had elevated blood pressure readings from time to time, his hypertension was fairly well controlled and his present medication adequate. Dr. Barnes diagnosed essential hypertension, with no evidence of hypertensive complications, and Dr. Jones, upon examining appellant's eyes, reported there was no evidence of hypertensive changes. Further, Dr.

Pound reported the appellant had been treated for this condition since 1958. As to the glaucoma, Dr. Jones, appellant's treating opthamologist, stated that although he prescribed treatment in the form of eye drops and frequent checkups as preventive medicine, appellant had no current visual handicap of any type. Dr. Jones further reported that appellant's vision corrected to 20/20 and that appellant had only slightly elevated intraocular pressure. The blurred vision appellant complained occurred when he used the eye drops prescribed by Dr. Jones was unverified by any treating physician. Substantial evidence clearly exists that these conditions do not rise to the severity necessary to prevent appellant from returning to his former work.

Though not entirely clear that appellant adequately presented this issue for review, we address what we feel is appellant's further contention that the Secretary considered his impairments only on an individual basis and thus erroneously failed to consider whether the impairments combined to prevent appellant from performing his past work. The record indicates this contention is unfounded. The ALJ states in his decision that "based upon a thorough consideration of all evidence, the ALJ concludes that appellant is not suffering from any impairment, *or a combination of impairments* of sufficient severity to prevent him from engaging in any substantial gainful activity for a period of at least twelve continuous months." It is clear the ALJ considered the combination issue.

■ Appellant's final allegation of error concerns the binding nature upon the Secretary of the findings of a state agency regarding appellant's disability. Appellant contends that the Georgia Disability Adjudication Section [GDAS] correctly found that appellant could not perform his past relevant work, but then applied the wrong medical-vocational guideline ("the grids") in ascertaining whether he was disabled. Appellant argues that the Administrative Law Judge is bound by the agency's determination that appellant is unable to return to his former work. Thus, the ALJ should have

adopted this determination, then applied the proper grid in lieu of the grid the GDAS allegedly incorrectly employed. Pursuant to this argument, the ALJ erred in making an independent determination that appellant was unable to return to his former job. An exhaustive review of the record reveals that this issue was not raised at either the administrative proceedings or the district court. We will not consider matters of this type first raised on appeal. *Pierre v. United States*, 525 F.2d 933, 936 (5th Cir.1976).

We have examined appellant's contentions of error and find them without merit. The decision of the district court is

AFFIRMED.